RuffiN, Chief Justice,
 

 after stating the case as above, proceeded as follows: Upoh the reading of the bill, it struck us as being liable to the objection of novelty; which is an objection in itself of no inconsiderable force. Our attention was not called to any precedent for it; and none such is within our own remembrance. In further considering the case, the Court has come to the conclusion that the bill can derive as little support from principle as from the practice of the Court.
 

 How far a Court could allow one notoriously of nonsane mind, like this party, to be charged even for proper maintenance, by even a brother, for so long a course of years, without applying for a commission and getting an order of the Court confirming the custody of the person, and fixing a proper allowance, would at least, be the subject of much consideration, if it were now to be determined. But we do not found our judgment on that point; and, therefore, it may be assumed that, like that of an infant, the contract of one
 
 non compos mentis
 
 is not void, when for necessaries or things suitable to the person’s fortune and habits of life. Indeed, such appears now to be the doctrine of the Courts of common law, where there is no fraud or undue advantage.
 
 Baxter
 
 v.
 
 Earl of
 
 Portsmouth, 5 Barn & Cres. 170;
 
 Brown
 
 v.
 
 Jodrell;
 
 3 Car. & Payne. 30. Now, if it be admitted that the plaintiff’s knowledge of his sister’s condition makes no difference, and that he is entitled to a part, at least,, or to the whole of his demand, as a debt for proper maintenance, yet that is a legal demand; for the recovery of which he has no right to come into this Court., It is simply a case for an a<*= tion of assumpsit, if the idiot be liable at all; and there is nothing to change the jurisdiction from law to equity, whereby this proceeding, asan adversary one
 
 inter partes,
 
 can be sustained.
 

 If the plaintiff were merely the creditor of his sister, such
 
 *388
 
 would be the law. The relation between the parties does not affect this question. That the.plaintiff is the committee of the other party, rather increases the objection to this mode of proceeding, as it seemá to usl The Court of Equity may order a proper allowance to be paid out of the lunatic’s es-for future maintenance; and it is not questioned that an order may also, in a proper case, be made for the, satisfaction of past maintenance; and, indeed, for the payment of any debt lunatic. But that is a jurisdiction arising out of the custody, by necessity, of the governing of the person and estate of the lunatic; and the corresponding obligation to main-tajn lunatic, and to pay his debts, as far as the estate mav 7 ,
 
 t.
 
 .
 
 J
 
 be available. If, indeed, a creditor can get a judgment at law, there will seldom be a ground on which the Chancellor can restrain him from proceeding against the person or tangible property of the lunatic. But, if the creditor find it necessary to apply to the Chancellor for payment, he owes his satisfaction partly to the grace of the sovereign, and partly to the, duty of the Chancellor to look to the ultimate benefit of the
 
 non compos
 
 and his estate. This last is so much the object, that Lord Eldon said he could not pay a lunatic’s debts and leave him destitute, but must reserve a sufficient maintenance for him, although, in consequence, the creditors might put him in jail, and the Court would have to support him there.
 
 Ex parte
 
 Hastings, 14 Ves. 182. But all these applications to the Chancellor aré made by petition, and the case does not assume the form of a controversy
 
 inter partes.
 
 Upon the petition, all necessary and proper enquiries are ordered; and in making them, the Master is usually directed to procure the aid of the presumptive heir, or next of kin, by giving them notice to attend his proceedings; and, upon the report, the order is for the payment of such sum as may appear fair and right upon the whole, and considering the value of the property. So likewise is it in settling, or as it is technically called, passing, the accounts of the committee: which is done upon petition.
 

 That being the tried and settled method,
 
 the
 
 Court rvould not like to allow it to be needlessly changed, although we are not very tenacious in matters of form merely, when the
 
 *389
 
 result is essentially the same. But, there are substantial dif-ferenees between applying by petition in the matter of a lunatic. and proceeding-by bill praying a decree. In the first place, it is the duty of the Court to have regard to the difference in expense. Then, in an adversary suit, the Court is not left at large in its enquiries to ascertain the real justice of the case, but is trammelled by the pleadings, and confined to the matters therein put in issue, and to the parties on record. In the present case, for example, the statute of limitations, if duly insisted on, might probably bar much of the plaintiff’s demand, which is of twenty years standing; yet, in the answer, put in upon'the overruling of the demurrer, no notice is taken of it. So that, however averse the Court might be to countenance such laches, and althbugh upon a petition an order might be refused for the payment of the stale parís of the claim, the point would yet be concluded in this suit by the frame of the pleadings. Besides, a decree goes much farther than an order. If the plaintiff were to get a decree at all in a' suit, it would bind the person of the lunatic; and upon it, execution might be sued out against her property generally, instead of the party being confined to a particular and appropriate fund, applied thereto by the Court in the order upon petition. Whatever maybe the unavoidable operation of the judgment of a Court of Law, certainly a Court of Equity ought not so to act that a person peculiarly under the protection of that Court, as a lunatic is, may be imprisoned for his maintenance as fixed by the Court.
 

 It is observable, also, that the Legislature takes the same view, in the acts on this subject. It is contemplated in the acts of 1801 and 1817, 1 Rev. Stat. ch. 57, that the matters and things therein authorised, are to be done by force, simply of the order of the Court acting in the matter of the lunatic, upon the petition of the committee or other person interested-
 

 It must, therefore, be certified to the Court of Equity of Warren, that, in the opinion of this Court, the decree is erroneous, and that the same should be reversed, and the demurrer sustained, and the bill dismissed at the costs of the plaintiff.
 

 Per Curiam. Bill dismissed.